IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | Case No. 13-5013-CR-S-BCW |
| JEFFREY D. MANLEY, | ) |  |
| Defendant. | ) |  |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b), the above-styled criminal action was referred to the undersigned for preliminary review. Defendant Jeffrey D. Manley filed a Motion to Suppress Evidence in the matter (Doc. 25). Manley seeks to suppress any evidence obtained by law enforcement officers during a search of Manley's home at 175 Fairwood Road, Lampe, Missouri, on February 26, 2013, because 1) police did not have an objectively reasonable articulable suspicion of criminal activity to detain the defendant, nor probable cause to arrest or search him; 2) the search warrant did not describe with sufficient particularity the place to be searched or the items to be seized; and 3) the seizure of the defendant's cell phone exceeded the scope of the warrant. The undersigned held a hearing on the motion on April 9, 2014. Defendant Manley was present with counsel, Stacie R. Bilyeu. The United States was represented by James J. Kelleher. For the reasons set forth below, **IT IS HEREBY RECOMMENDED** that the Motion to Suppress Evidence be **DENIED**.

### FINDINGS OF FACT

Detective Jeff Romero testified at the hearing that in January 2013 he supervised the Cyber Crimes Unit of the Nixa, Missouri, Police Department. Detective Romero testified that

the Regional Internet Crimes office detected a computer involved in child pornography. Using the Internet Protocol (IP) Address, law enforcement traced the computer to Defendant Manley. Internet Service Provider (ISP) CenturyLink indicated Manley's service address as 77 Fairwood Road, Lampe, Missouri. On February 25, 2013, police obtained a warrant to search that address, which they believed was Manley's home. The warrant specified that police could seize electronic or magnetic storage devices or computer systems, and listed numerous items that fell into those categories. Cellular phones, however, were not among the specific items listed.

The next day, officers executed the warrant at 77 Fairwood Road. An initial search of that residence revealed no child pornography. Officers also determined that Manley did not reside there, but at 175 Fairwood Road in Lampe. Detective Fields left the scene to apply for a search warrant for the correct address, while the others proceeded to Manley's residence down the road. There was no answer to the knock on the door of Manley's residence, so officers waited in the street and in the driveway for Detective Fields to return with the search warrant.

While they were waiting, Defendant Manley arrived by car and stopped in the road in front of the house. His daughter and an alleged victim were passengers. Detective Romero and Detective Orville Choate identified themselves and asked Manley to pull his car into the driveway to speak with the officers. Manley complied, and exited the car. The officers stated they were investigating a computer at his residence for child pornography. Manley replied, unprompted, that there was "some of that" on his computer. Detective Choate asked Manley to clarify whether he meant that his computer contained child pornography. Manley replied, yes.

Manley then called his mother on his mobile phone and asked her to pick up the girls. After the call to his mother, Detective Choate seized Manley's cell phone. Officers did not question Manley while waiting for his mother to arrive. Manley was allowed to return to his

vehicle to retrieve his ID, although an officer secured the vehicle first by removing a handgun from it.

When his mother arrived, Manley told her that the police were there to investigate downloading of child pornography. His mother stated that it could be downloaded accidentally. Manley told her that some of it was accidental and some of it was not. Police were not a part of this conversation, but could hear it from their vantage point. Manley's mother placed the girls in her vehicle. Manley was allowed, with Detective Choate as an escort, to say goodbye to his daughter.

Detective Choate asked Manley for consent to search the house without a warrant. Manley denied the request. Later, after his mother and daughter had departed, Manley gave Detective Choate permission to search the residence because "the end result will be the same." Detective Choate replied that they would wait for arrival of the warrant. Due to the cold temperature, Manley asked if they could wait inside the house.

After the detectives had performed a "safety sweep" to ensure no one else was in the house, they waited with Manley in the kitchen. Officers allowed Manley to use the restroom by himself. When Manley returned to the kitchen, after approximately ten minutes, Detective Romero advised him of his *Miranda* rights and questioned him regarding the alleged download of child pornography. Manley made several admissions to the detectives. During the course of that interview, Detective Fields returned with a search warrant, and the detectives searched the house. At the conclusion of the interview, Manley invoked his right to an attorney. Detective Romero immediately ceased questioning him. Detective Romero testified that police first arrived at Manley's residence at 1:40 p.m., and Detective Romero read him his Miranda rights at 2:14 p.m.

Detective Orville Choate also testified at the hearing. He related that after he and Detective Romero informed Manley that they were investigating the downloading of child pornography, Manley stated that he had some on the computer in his house. Detective Choate reported that he was surprised that Manley made that admission so freely, so Detective Choate asked him to clarify. Manley reiterated he had downloaded and possessed child pornography. Manley, standing at the end of the driveway, called his mother using his cell phone, but only after Detective Choate looked at the phone to ensure that Manley was making a phone call and not using the phone for another purpose. Detective Choate heard Manley tell his mother he had downloaded child pornography.

At the end of the call, Detective Choate seized Manley's cell phone. Choate testified that he seized the phone due to his concern Manley might attempt to destroy evidence on the phone itself, or use the phone to connect to the internet to destroy evidence on a computer inside his house.

Manley's mother arrived at the house about twenty minutes later. Manley told her, within hearing distance of Detective Choate, that the investigation was about him downloading child pornography. She told Manley that was stupid, and turned to Choate and said it was probably accidental. Manley then told his mother that it was partially accidental and partially purposeful. Manley told Choate that he wanted to speak with his daughter before Manley's mother left with the girls. Manley hugged and spoke briefly with his daughter. Choate stood nearby, but did not interfere with that interaction.

After Manley's mother had left with the children, Detective Choate asked for Manley's consent to search the house and computer. Manley told Choate that he wanted to wait for the search warrant. After a few minutes, Manley requested that they wait inside the house, due to

4

the cold temperature.  Detective Romero took Manley inside, while Detective Choate walked down the road to find a stronger cell phone signal.  He called Detective Fields, who informed him that the search warrant had been signed by the judge.  When Detective Choate returned to the house, Detective Romero was already interviewing Manley at the kitchen table.

### CONCLUSIONS OF LAW

*Particularity of Second Search Warrant*

Based upon information received from ISP CenturyLink, police initially obtained a search warrant that authorized a search of 77 Fairwood Road, Lampe, Missouri, which had been listed as Manley's ISP service address.  Police entered 77 Fairwood and determined in short time that there was no child pornography at that residence, and that it was not Manley's residence.  Police determined that Manley resided at 175 Fairwood Road, down the street.  Police proceeded to 175 Fairwood, while Detective Fields left the scene to apply for a search warrant for that address.  The second application and affidavit for search warrant and the search warrant itself were introduced as exhibits at the hearing.

The first search warrant application and search warrant, obtained on February 25, 2013, listed 77 Fairwood Road as the address and the directions and description as follows:

> Leaving the Stone County Judicial Center turn right, eastbound, onto Missouri 176/413 South to Missouri 13.  Turn right onto Missouri 13 (south) to State Highway H.  Continue west on State Highway H, approximately 3.6 miles to Fairwood Road.  Take Fairwood Road south, approximately .25 miles to 77 Fairwood Road.
>
> This residence appears to be a single family dwelling with white in-color vinyl siding and white in-color metal roof.  She attached photograph marked as exhibit #1.  There appears to be at least two outbuildings on the property.  One outbuilding appears to have wooden siding and painted a reddish color with exterior windows trimmed out with white paint.  Another outbuilding appears to be constructed out of wood and having barn style doors.

The second search warrant *application*, prepared while officers waited at Manley's

residence on February 26, 2013, listed the address to be searched as 175 Fairwood Road, Lampe, Stone County, Missouri. It stated the directions and description as follows:

> Leaving the Stone County Judicial Center turn right, eastbound, onto Missouri 176/413 South to Missouri 13. Turn right onto Missouri 13 (south) to State Highway H. Continue west on State Highway H, approximately 3.6 miles to Fairwood Road. Take Fairwood Road south, approximately .75 miles to 175 Fairwood Road.
>
> This residence appears to be a single family dwelling with off white in-color siding and white in-color shutters. The residence has a wooden front port and another wooden porch wrapping around one side and rear of residence.

The second search *warrant* lists the address to be searched as 175 Fairwood Road, Lampe, Stone County, Missouri. The description of the house is identical to that in the second application. The last sentence of the directions, however, reads: "Take Fairwood Road south, approximately .25 miles to 77 Fairwood Road." It appears that the detective changed the directions in the application to show "Take Fairwood Road south, approximately .75 miles to 175 Fairwood Road," but in the search warrant signed by the judge on February 26, 2013, the directions were not changed from the first search warrant.

On this basis, Manley argues that the warrant was not sufficient to satisfy the particularity requirement as to the place to be searched. To determine whether a search warrant sufficiently describes the place to be searched, a court considers whether the description in the warrant serves "to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched." *United States v. Gitcho*, 601 F.2d 369, 371 (8th Cir. 1979); *see also United States v. Thomas*, 263 F.3d 805, 807 (8th Cir. 2001). Courts have "routinely upheld" searches pursuant to warrants in which "one part of the description of the premises to be searched is inaccurate, but the description has other parts which identify the place to be searched with particularity." *Gitcho,*

6

601 F.2d at 371. Courts consider various factors to determine the sufficiency of a warrant, including whether the premises intended to be searched was under surveillance while the warrant was obtained. *Id.* at 372. Ultimately, whether the warrant was sufficiently particular depends upon the factual circumstances. *United States v. Gamboa*, 439 F.3d 796, 806 (8th Cir. 2006).

Based on these standards, the undersigned recommends that the second search warrant met the particularity requirement. It contained the correct street address: 175 Fairwood Road. The description of the house is the same description as appears in the application for the second search warrant, which is distinctly different from the description of the house at 77 Fairwood Road. Although the directions in the search warrant to 175 differ from those in the application, and if taken in isolation from the address and description of the property, would lead to 77 Fairwood Road, the undersigned recommends this error does not nullify the sufficiency of the warrant. The address and description are accurate. Furthermore, Detective Fields had just been to 77 Fairwood Road, and thus it was highly unlikely that he would make a mistake as to which house was the intended location of the second search. Even if he did, officers were waiting at 175 Fairwood Road, in the driveway and in the street, which was the intended location of the search. Thus, the probability that officers would search the wrong premises was extremely low.

*Pre-Warrant Seizure of Cellular Phone*

Manley also argues that the seizure of his cellular phone by Detective Choate violated the Fourth Amendment. Detective Choate testified at the hearing that after determining that Manley was using the phone to make a call, Choate allowed Manley to use his cell phone to call his mother. After the call, Detective Choate seized the phone. Detective Choate testified that he took the phone out of concern that Manley might use the phone to destroy evidence. Detective Choate testified that cellular phones can easily be programmed to destroy evidence on the phone

7

itself or on a remote computer, at the touch of a button.

The need of law enforcement to prevent the imminent destruction of evidence is a long-recognized exception to the Fourth Amendment's warrant requirement. *See Missouri v. McNeely,* 133 S. Ct. 1552, 1559 (2013); *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011). Where probable cause exists to arrest a suspect, brief, limited warrantless seizures of the person or property do not violate the Fourth Amendment. *Cupp v. Murphy*, 412 U.S. 291, 295 (1973). To determine whether a seizure to prevent the destruction of evidence is justified, a court looks to the totality of the circumstances faced by law enforcement. *See McNeely*, 133 S. Ct. at 1559.

At the time Detective Choate seized Manley's cellular phone, police had information, obtained from the ISP, that child pornography had been downloaded to Manley's IP address. When Manley first arrived on the scene, he admitted to Detectives Choate and Romero that he had downloaded child pornography onto his laptop. During his conversations with his mother, Manley told her he had downloaded child pornography. Based on his training and experience, Detective Choate knew that Manley could potentially use his phone to destroy evidence on the phone itself or remotely to destroy evidence on his computer. Faced with these circumstances, it was reasonable for Detective Choate to believe that Manley could use his phone to destroy evidence. Thus, the undersigned recommends that the brief seizure of the phone falls into the exception for preventing the destruction of evidence of the warrant requirement.

Furthermore, as discussed more thoroughly in the report and recommendation on the motion to suppress statements, at the time of the seizure of the phone, Manley's contact with police was consensual, or at the most, he was properly detained for investigatory purposes pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), which permits brief warrantless detention of a suspect on "reasonable suspicion supported by articulable facts that criminal activity 'may be

afoot.'" *United States v. Morgan*, 729 F.3d 1086 (8th Cir. 2013) (quoting *Terry*, 392 U.S. at 30). Including the initial consensual contact, the entire encounter with police prior to Manley's arrest lasted only 35 minutes, approximately ten of which Manley spent in the restroom. In consideration of the totality of the circumstances, the undersigned recommends the duration of Manley's pre-arrest detention was not unreasonable.

Finally, the undersigned suggests that officers had probable cause to arrest Manley at this point in the encounter, and could have seized the phone incident to arrest. *See Arizona v. Gant*, 556 U.S. 332, 339 (2009) (holding officers may seize evidence in the "area within the immediate control of the arrestee" at the time of arrest).

*Scope of Warrant*

Manley argues that the continued seizure of his cellular phone violated his constitutional rights because the warrant did not authorize officers to seize cellular phones, and therefore the seizure was outside the scope of the warrant. The warrant is clear that the intended objects of the search were photographs, videos, or other depictions of child pornography, and any related documents stored or saved onto electronic media related to child pornography. The warrant authorizes search and seizure of computers, electronic or magnetic storage devices, memory cards, digital media, cameras, camera equipment, records of internet activity, which is specified to include any type of electronic or magnetic storage devices, any information on a "'computer system' as more fully described below, ***or on any other electronic or magnetic storage device***." The warrant goes into great detail to describe the types of storage media and the types of documents subject to seizure, listing smart cards, a digital camera's installed memory, memory sticks, and compact flash cards. Among its exhaustive list of digital and electronic devices, the warrant does *not* mention cellular phones.

9

The government urges that the Eighth Circuit has plainly held that a cellular phone is a computer. *See United States v. Kramer*, 631 F.3d 900, 902-903 (8th Cir. 2011). And as such, a cellular phone is contemplated in the warrant. The undersigned recommends, however, that regardless of this holding, the language in the warrant is sufficient to authorize seizure of cellular phones. It is well-settled that in a search pursuant to a search warrant, police may seize only items described in the warrant. *United States v. Robbins*, 21 F.3d 297, 300 (8th Cir. 1994). In *United States v. Gamboa*, 439 F.3d 796, 807 (8th Cir. 2006), the Eighth Circuit found that seizure of items not specified by name were authorized when they fell "within the categories specified in the warrant." The court determined that cell phones could well contain "records of the use and purchase of controlled substances," which were specified in the warrant. "A lawful search extends to all areas and containers in which the object of the search may be found." *United States v. Hughes*, 940 F.2d 1125, 1127 (8th Cir. 1991).

As in *Gamboa*, the categories of items listed in the warrant here easily encompass a cellular phone which contains a still and video camera, and memory to store such images. The undersigned thus recommends that the seizure of the cellular phone falls within the scope of the warrant as a computer storage device. Ultimately, as the government correctly points out, the images of child pornography found on the phone were not found within the memory of the cellular phone itself, but on the SD card contained inside. The language of the warrant specifically includes memory cards.

Accordingly, the undersigned recommends that the evidence seized from Manley's dwelling on February 26, 2013, was not seized in violation of the Fourth Amendment, and

should be deemed admissible.[1]

## CONCLUSION

Therefore, based on all the foregoing, and pursuant to 28 U.S.C. § 636(b) and Local Rule 72.1 of the United States District Court for the Western District of Missouri, the undersigned hereby **RECOMMENDS** that the Motion to Suppress Statements (Doc. 25) be **DENIED**.

**IT IS SO ORDERED.**

**DATED:  June 10, 2014**

          /s/ *David P. Rush*
          **DAVID P. RUSH**
          **United States Magistrate Judge**

---

[1] The government makes an alternative argument that the evidence seized on February 26, 2013, would have been inevitably discovered after police interviewed the victim in the case.  Having found that the warrant was valid, and the seizure of the cellular phone proper, the undersigned finds it unnecessary to further evaluate this argument.  Moreover, the government raised this issue in its response in opposition to the Motion to Suppress Evidence, but failed to produce any evidence at the hearing of the testimony of the victim that would support an "inevitable discovery" theory.